IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SEAN BARNETT,

        Plaintiffs,

    v.

SAL MARTINEZ, #782; LEVY BARNES, #820; CASEY TINLOY, #587; JUSTIN GEBB, #111; ROBERT ANDERSON, #787; CYNTHIA VERBIS, #800,

        Defendants.

———————————————————————/

No. C 09-5605 CW

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (Docket Nos. 47 and 52)

Plaintiff Sean Barnett alleges that Defendants Sal Martinez, Casey Tinloy, Justin Gebb, Robert Anderson and Cynthia Verbis violated his civil rights by arresting him without probable cause.[1] Plaintiff moves for partial summary judgment. Defendants oppose his motion and cross-move for summary judgment. Plaintiff opposes Defendants' motion with respect to his section 1983 claim against Martinez, Gebb and Anderson for his alleged arrest without probable cause and his related state law claims against them. Plaintiff does not oppose summary judgment on his section 1983 claim against Martinez, Gebb and Anderson, to the extent it was based on other grounds, or his claims against Tinloy and Verbis. The motions were heard on June 23, 2011. Having considered oral argument and the papers submitted by the parties, the Court DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendants' cross-motion for summary judgment.

_____

[1] On May 25, 2011, Plaintiff dismissed with prejudice his claims against Levy Barnes. (Docket No. 51.)

United States District Court
For the Northern District of California

BACKGROUND

On the evening of August 16, 2008, Plaintiff was holding "Club Flirt," his adult-oriented event, at 1188-1190 Folsom Street in San Francisco.  Plaintiff worked as the doorman for the event, greeting patrons and collecting admission fees.  At around 10:25 p.m., California Department of Alcoholic Beverage Control (ABC) District Administrator Gebb, along with two other ABC investigators, began an undercover investigation into potential alcoholic beverage license violations in the building in which Club Flirt was being held.  As District Administrator, Gebb was the ranking officer. ABC Investigators Martinez, Anderson and Tinloy were stationed outside, awaiting orders from Gebb.

After observing purported violations, at approximately 12:30 a.m., Gebb directed Martinez, Anderson and Tinloy to enter the building.  Martinez, Anderson and Tinloy wore jackets or vests marked "POLICE" on the back.  Anderson detained Plaintiff and escorted him up a flight of stairs to the second floor of the building.  Plaintiff asserts that he was frisked at the bottom and at the top of the stairs.  He does not contend, however, that it was Anderson who frisked him.

Anderson took Plaintiff to a room located in the front of the second floor, in which Plaintiff and other individuals waited until they were called for an interview with Tinloy in another room. Anderson directed Plaintiff to sit in a chair that was placed up against a wall and at a ninety-degree angle to a sofa.  The sofa was flush against the corner of the room.  Anderson was the only ABC investigator assigned to watch the room.  After placing Plaintiff in the room, Anderson left for approximately thirty

seconds to one minute.[2]  He then returned with another individual

under investigation, Patrick Au, whom Anderson instructed to sit in

a corner opposite to where Plaintiff sat.  Anderson then left for a

second time, leaving Plaintiff and Au unattended.  Upon returning,

Anderson saw Plaintiff out of his chair and speaking Au.  Anderson

instructed Plaintiff to return to his assigned corner.

Thereafter, Tinloy called Plaintiff for his interview and

escorted him to the interview room.  As they were walking,

Plaintiff asked to use the restroom.  Tinloy permitted him to do so

after searching him.  Plaintiff left the premises after his

interview.

After all non-ABC personnel had left the building, Gebb

instructed Martinez to conduct a final sweep of the building.

Martinez searched the front room in which Plaintiff and the other

individuals waited.  Upon moving the sofa adjacent to the chair in

which Plaintiff sat, Martinez discovered a .25 caliber pistol in an

ankle holster.  Martinez believed that the ankle holster made "it

easier for somebody to conceal" the gun.  Gower Decl., Ex. J,

Martinez Depo. 80:4-8.  The gun was located between the wall and

the sofa, and Anderson informed Martinez that Plaintiff sat near

that area.  Martinez asked the other ABC investigators whether they

had dropped a gun.  Everyone responded, "no."  Martinez conducted a

search of the gun's serial number, which revealed that it was

_____

[2] At the hearing on the motion, Plaintiff asserted that an ABC
officer was always present in the front room.  This contention is
not supported.  Plaintiff testified at his deposition that
unidentified ABC officers accompanied him into the room.  However,
there is no evidence that the ABC officers remained in the room at
all times.  Thus, Anderson's testimony that Plaintiff was left
unattended at times is undisputed.

United States District Court
For the Northern District of California

registered to Plaintiff.

Gebb instructed Martinez and Anderson to arrest Plaintiff, who was located outside the building.  Anderson handcuffed Plaintiff and brought him back to the second floor.  Anderson searched Plaintiff, and Martinez advised Plaintiff of his <u>Miranda</u> rights. Plaintiff indicated that he was willing to talk.

Martinez asked Plaintiff whether he owned a gun.  Plaintiff responded, "yes," and stated that, the last time he saw it, it was in his duffel bag, which he had placed on his desk at the top of the stairs.  Plaintiff also indicated that he did not know how his gun came to be in the front room, that he did not permit anyone that night to borrow his gun and that he did not know if anyone knew that he had a gun in his duffel bag.

At around 3:30 a.m. on August 17, 2008, Martinez transported Plaintiff to the San Francisco County Jail.  Plaintiff was booked for carrying a concealed weapon in violation of California Penal Code section 12025(a)(2).  The San Francisco District Attorney's Office declined to charge Plaintiff.

At his deposition, Plaintiff testified that Defendants did not physically injure him.  He claims, however, that he suffered emotional distress.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir.

United States District Court
For the Northern District of California

4

1  1987).

2      The moving party bears the burden of showing that there is no

3  material factual dispute.  Therefore, the court must regard as true

4  the opposing party's evidence, if supported by affidavits or other

5  evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815

6  F.2d at 1289.  The court must draw all reasonable inferences in

7  favor of the party against whom summary judgment is sought.

8  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

9  587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d

10  1551, 1558 (9th Cir. 1991).

11      Material facts which would preclude entry of summary judgment

12  are those which, under applicable substantive law, may affect the

13  outcome of the case.  The substantive law will identify which facts

14  are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

15  (1986).

16      Where the moving party does not bear the burden of proof on an

17  issue at trial, the moving party may discharge its burden of

18  production by either of two methods:

19      The moving party may produce evidence negating an
       essential element of the nonmoving party's case, or,
20     after suitable discovery, the moving party may show that
       the nonmoving party does not have enough evidence of an
21     essential element of its claim or defense to carry its
       ultimate burden of persuasion at trial.
22
   <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d
23
   1099, 1106 (9th Cir. 2000).
24
25      If the moving party discharges its burden by showing an

26  absence of evidence to support an essential element of a claim or

27  defense, it is not required to produce evidence showing the absence

28  of a material fact on such issues, or to support its motion with

5

evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u>
<u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v.</u>
<u>NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
moving party shows an absence of evidence to support the non-moving
party's case, the burden then shifts to the non-moving party to
produce "specific evidence, through affidavits or admissible
discovery material, to show that the dispute exists."  <u>Bhan</u>, 929
F.2d at 1409.

     If the moving party discharges its burden by negating an
essential element of the non-moving party's claim or defense, it
must produce affirmative evidence of such negation.  <u>Nissan</u>, 210
F.3d at 1105.  If the moving party produces such evidence, the
burden then shifts to the non-moving party to produce specific
evidence to show that a dispute of material fact exists.  <u>Id.</u>

     If the moving party does not meet its initial burden of
production by either method, the non-moving party is under no
obligation to offer any evidence in support of its opposition.  <u>Id.</u>
This is true even though the non-moving party bears the ultimate
burden of persuasion at trial.  <u>Id.</u> at 1107.

                              DISCUSSION

     Because Plaintiff does not oppose it, summary judgment is
granted in favor of Tinloy and Verbis on Plaintiff's claims against
them.  Additionally, Defendants' motion is granted with respect to
Plaintiff's section 1983 claim against Gebb, Martinez and Anderson,
to the extent it is based on alleged misconduct other than his
purported arrest without probable cause.

     Plaintiffs' remaining claims are against Gebb, Martinez and
Anderson for: (1) deprivation of his Fourth Amendment rights

through his alleged arrest without probable cause, in violation of 42 U.S.C. § 1983; (2) false imprisonment; (3) intentional infliction of emotional distress; (4) negligence; (5) assault and battery; and (6) violation of California Civil Code section 52.1. Plaintiff does not dispute that, to avoid summary judgment on these claims, he must demonstrate a genuine issue of material fact with respect to whether Gebb, Martinez and Anderson had probable cause to arrest him.

The Fourth Amendment requires law enforcement officers to have probable cause to make warrantless arrests. Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2008). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Id. (citation and internal quotation marks omitted). "While conclusive evidence of guilt is not necessary to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough." Id. (citation and internal quotation and editing marks omitted).

Gebb, Martinez and Anderson claim that they have qualified immunity from Plaintiff's claims because reasonable officers confronted with the same situation would have believed that probable cause existed to arrest him. "The qualified immunity inquiry asks two questions: (1) was there a violation of a constitutional right, and, if so, then (2) was the right at issue 'clearly established' such that it would have been clear to a reasonable officer that his conduct was unlawful in that situation?" Brooks v. City of Seattle, 599 F.3d 1018, 1022 (9th

United States District Court
For the Northern District of California

Cir. 2010) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001)).
If officers' "actions reflected a reasonable mistake about what the
law requires, they are entitled to qualified immunity." <u>Brooks</u>,
599 F.3d at 1022 (citing <u>Blankenhorn v. City of Orange</u>, 485 F.3d
463, 471 (9th Cir. 2007)).

Plaintiff was arrested pursuant to California Penal Code
section 12025(a)(2), which provides that a "person is guilty of
carrying a concealed firearm when he or she . . . [c]arries
concealed upon his or her person any pistol, revolver, or other
firearm capable of being concealed upon the person."  At the time
Martinez and Anderson arrested Plaintiff, they and Gebb knew the
following facts.  First, the gun was registered to Plaintiff.
Second, the gun was in an ankle holster, which Martinez believed
made it easier to conceal the gun.  Third, the gun was found
adjacent to where Plaintiff was sitting as he awaited his
interview.  Fourth, Plaintiff was handling money as the doorman for
an adult-oriented event, which led Anderson to believe that
Plaintiff was armed.  Fifth, Plaintiff was escorted from room-to-
room inside the premises, but was left unattended for certain
periods while he waited in the front room.  These undisputed facts,
when viewed together, permit a reasonable inference that Plaintiff
carried a concealed weapon.  Thus, probable cause supported his
arrest.

Plaintiff insists that these facts were consistent with his
innocence.  He complains that Gebb, Martinez and Anderson did not
first investigate whether the front room had been searched before
he was placed in it or whether he had been frisked.  However, the
test for probable cause "'is not whether the conduct under question

8

**United States District Court**
For the Northern District of California

is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior.'" Ramirez, 560 F.3d at 1024 (quoting United States v. Thomas, 863 F.2d 622, 627 (9th Cir. 1988)). Plaintiff does not identify any facts, ignored by Gebb, Martinez and Anderson, that tended to suggest that he did not commit the crime. That these Defendants could have investigated further does not vitiate probable cause. See John v. City of El Monte, 515 F.3d 936, 941-42 (9th Cir. 2008).

Because Gebb, Martinez and Anderson did not commit a constitutional violation, they are qualifiedly immune from liability on Plaintiff's section 1983 claim. Even if they violated Plaintiff's constitutional rights, Gebb, Martinez and Anderson nevertheless would enjoy qualified immunity because they did not act unreasonably. The facts that the gun was registered to Plaintiff, that it was found in an ankle holster that could have facilitated the gun's concealment on a person, that it was secreted adjacent to where he was sitting, that he was serving in a role that made it likely he was armed, and that he was left unattended for some period of time would have led reasonable officers to believe they had probable cause to arrest him.

Accordingly, there is not a material factual dispute as to whether Gebb, Martinez and Anderson had probable cause to arrest Plaintiff, and summary judgment in their favor is appropriate on his claims against them under section 1983 and California Civil Code section 52.1, which prohibits interference with an individual's constitutional rights. Further, because there is no material factual dispute regarding whether there was a constitutional violation, Gebb, Martinez and Anderson are entitled

United States District Court
For the Northern District of California

1    to qualified immunity.  Even if there were a triable issue, Gebb,

2    Martinez and Anderson would nevertheless enjoy qualified immunity

3    because a reasonable officer could have believed that their actions

4    were lawful under the circumstances.  Summary judgment in Gebb's,

5    Martinez's and Anderson's favor is likewise appropriate on

6    Plaintiff's claims for false imprisonment, negligence and assault

7    and battery.  See Salazar v. Upland Police Dep't, 116 Cal. App. 4th

8    934, 947-48 (2004) (concluding that summary judgment is appropriate

9    on such claims in the absence of a triable issue with respect to

10   probable cause); see also Cal. Pen. Code § 847(b)(1) (precluding

11   liability for false imprisonment when officer "had reasonable cause

12   to believe arrest was lawful").  Because there is no evidence that

13   Gebb, Martinez and Anderson engaged in extreme and outrageous

14   conduct or that Plaintiff suffered severe or extreme emotional

15   distress, summary judgment in their favor is also warranted on

16   Plaintiff's claim for intentional infliction of emotional distress.

17   See Catsouras v. Dep't of Cal. Highway Patrol, 181 Cal. App. 4th

18   856, 874 (2010) (listing elements for tort).

19                              CONCLUSION

20        For the foregoing reasons, the Court DENIES Plaintiff's motion

21   for partial summary judgment (Docket No. 47) and GRANTS Defendants'

22   cross-motion for summary judgment (Docket No. 52).

23        The Clerk shall enter judgment accordingly and close the file.

24   The parties shall bear their own costs.

25        IT IS SO ORDERED.

26

27   Dated: 6/24/2011

28                                    CLAUDIA WILKEN
                                      United States District Judge

                                     10